```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


AMG NATIONAL TRUST BANK      : CIVIL ACTION
                             :
        vs.                  :
                             : NO. 06-CV-4337
STEPHEN C. RIES              :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                          **February 12, 2008**

This matter is once again before us to address the matter of Defendant, Stephen Ries' contempt of this Court's Temporary Restraining Order of October 3, 2006 directing that he refrain from directly or indirectly contacting, soliciting, accepting business from or performing or offering to perform services in any capacity for any of the clients whom he serviced while employed by Plaintiff, AMG National Trust Bank.  In our Memorandum and Order of September 13, 2007, we specifically found that Mr. Ries, in response to telephone calls from a handful of his former AMG clients, did provide some financial services to those clients in direct contravention of that Order.  As per our directive, the parties have now supplemented the record with additional evidentiary submissions and briefs and we write now to resolve the contempt issue.

## Discussion

It is well-settled that "to prove civil contempt, a court

must find that (1) a valid court order existed,... (2) the defendant had knowledge of that order, and (3) the defendant disobeyed the order." <u>United States ex. rel. Salvino v. Safeco Insurance Co. of America</u>, No. 05-1449, 2006 U.S. App. LEXIS 12805, 181 Fed. Appx. 247, 250 (3d Cir. May 23, 2006), quoting <u>John T. ex. rel. Paul T. v. Delaware County Intermediate Unit</u>, 318 F.3d 545, 552 (3d Cir. 2003).  These "elements must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt." <u>Id</u>., quoting <u>Id</u>.  Specificity in the terms of the order is a predicate to a finding of contempt because a person will not be held in contempt unless the order has given him fair warning.  <u>Harris v. City of Philadelphia</u>, 47 F.3d 1342, 1349 (3d Cir. 1995).  It should be noted that willfulness is not a necessary element of civil contempt and accordingly, evidence regarding good faith does not bar the conclusion that the defendant acted in contempt. <u>John T.</u>, 318 F.3d at 552.

If civil contempt sanctions are not designed to punish, they may be retroactive.  District courts hearing civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve full remedial relief.  <u>Id</u>., at 554.  Often this discretion involves ordering payment for the costs of past non-compliance.  <u>Id</u>.  In <u>Synthes Spine Co., L.P. v. Walden</u>, Civ. A. No. 04-4140, 2006 U.S. Dist. LEXIS 80751 at *33 (E.D. Pa. Oct.

20, 2006), Judge Davis of this Court succinctly summarized the law governing the imposition of sanctions for civil contempt in this Circuit:

> The remedy for civil contempt must be either coercive, compelling compliance with a court order, or compensatory, correcting loss sustained by the misconduct. See, McDonald's Corp. v. Victory Inv., 727 F.2d 82, 87 (3d Cir. 1984). ("civil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by disobedience"). The damages award must not "exceed the actual damages *caused* the offended party by a violation of the court's order." Quinter v. Volkswagen of America, 676 F.2d 969, 975 (3d Cir. 1982)(emphasis added). See Also, Gregory v. Depte, 896 F.2d 31, 34 (3d Cir. 1990) (compensatory damages for civil contempt violation "must not exceed the actual damages caused the offended party"). In other words, an award of damages requires a link, a "sufficiently specific nexus," between the alleged damages and the offending party's violation of the judicial order. Apex Fountain Sales, Inc., 27 F.3d 931, 936 (3d Cir. 1994) (noting that district court in contempt action will undoubtedly "make particularized findings indicating specifically how the damages are actually linked to the contemptuous behavior it found"); see also Accusoft Corp. v. Palo, 237 F.3d 31, 58 (1st Cir. 2001) (affirming denial of award of damages for civil contempt when plaintiff fails to introduce evidence that defendant's breach of settlement agreement determining rights of competing parties in computer software caused alleged damages, despite evidence that many of plaintiff's customers became customers of defendant after breach and that plaintiff failed to reach projected levels of growth); GE Harris Railway Electronics, L.L.C. v. Westinghouse Air Brake Co., 2004 U.S. Dist. LEXIS 16329, 2004 WL 1854198, at *13 (D.Del. Aug. 18, 2004). This causal link applies to all theories and forms of damages, including lost profits, disgorgement of profits, attorneys' fees, lost management time, and costs. See, e.g., McDowell v. Philadelphia Housing Authority, 423 F.3d 233, 240 (3d Cir. 2005) ("The sanction imposed on a civil contemnor for his past conduct may not exceed the actual damages caused by his violation of the court's order."); Institute for Motivational Living v. Doulos Institute for Strategic Consulting, Inc., 110 Fed. Appx. 283, 289 (3d Cir. 2004) (compensatory "contempt award must relate to the actual loss

    (including fees and expenses) that flowed from the contemnor's violation"); Woods v. Woods, 28 F.3d 396, 401 (3d Cir. 1994) (noting that district court can award damages for expenses involved in demonstrating violations, but must adjust award according to principles of causation, to account for limited success of contempt motion); National Drying Machine Co. v. Ackoff, 245 F.2d 192, 194-195 (3d Cir. 1957).

    In this case, we previously found in our Decision dated November 13, 2007 that the defendant, Stephen Ries, was in civil contempt of this Court's Temporary Restraining Order issued on October 3, 2006. This finding was based upon the defendant's acknowledgment at the preliminary injunction hearing of December 14, 2006, that, some nine days after the entry of the TRO, he knowingly provided financial services to a client whom he had serviced on behalf of AMG and that despite having received notice of the Court Order, he provided counsel and assistance to the client. (See, N.T. 12/14/06, 49-56). The plaintiff now seeks to recover the sum of $1,168,588.40 as contempt sanctions against the defendant which it asserts is appropriate under the liquidated damages clause of the Confidential Information and Employment Agreement.[1] Alternatively, Plaintiff submits that an award of $233,917.68 is proper, which figure represents a minimum of two years of compensation for lost revenue attributable to these same five clients plus $197,343.90 in attorneys' fees and

---

[1] Specifically, Plaintiff contends that the liquidated damages clause provides for the assessment of liquidated damages in the amount of ten times the most recent annual gross fee income attributable to each lost client. AMG arrives at this figure by purportedly applying this formula to just the five clients which AMG claims it lost due to Stephen Ries' actions.

costs.  In response, the defendant asserts that the plaintiff has not met its burden of proving by clear and convincing evidence that his actions induced the five clients at issue to terminate their relationships with AMG and in fact, that the evidence demonstrates that he substantially complied with the Court's temporary restraining order.  We now examine the evidence submitted.

In support of its position, Plaintiff primarily relies upon the Declaration of Emile L. Reed, its Vice President of Finance and the client satisfaction surveys completed by Ellen Connolly, Valery Jusela and Jamini Davies wherein they indicated that they were "completely satisfied with the services of both AMG and Ries."  In addition, Mr. Reed declares that "[n]one of these clients have ever indicated to AMG dissatisfaction with AMG." (Reed Declaration, ¶3)  The Reed Declaration further asserts that "AMG's normal attrition rate of clientele is 3-4% per year," and that "in all of 2005, AMG suffered a loss of 10 PFM (private financial management) clients out of 295."  (Reed Declaration at ¶10).  Finally, according to Mr. Reed, AMG earned $22,277.60 in revenue from the last four quarters that Ellen Connolly was its client, $19,391.47 was earned from the last four quarters in which Valery Jusela was a client, $48,356.62 in revenue was earned from the last four quarters of servicing Jamini Davies' accounts, and the sums of $11,273.39 and $15,659.76 were earned

in revenue from the last four quarters in which Michael Haaf and Suzanne Apple were AMG clients.  (Reed Declaration at ¶s4-8).  Copies of its legal bills from the Greenberg Traurig law firm were also produced reflecting that AMG incurred attorneys' fees of $178,859.50 relative to this matter between September 12, 2006 and September 29, 2007 and costs during that time frame totaling $18,484.40.  A Declaration from Carol Mager, Esquire of the law firm Mager and Goldstein, LLP was also included in the Plaintiff's submissions attesting to the reasonableness of the charges for attorney time and expenses.

   In reviewing the client satisfaction surveys referenced above, we note that while Gary Jusela and Ellen Connolly's survey responses do indicate that they were "completely satisfied," Jamini Davies was "somewhat satisfied."  All of the client satisfaction surveys attached to Plaintiff's Supplement do however indicate that all of the responding clients were "completely satisfied" with Mr. Ries' services and reflect their beliefs that Defendant was an excellent financial advisor to each of them.  It further appears that while the responding clients on the whole were satisfied with AMG, with the exception of the financial counseling provided by the defendant, those clients used few, if any, of AMG's other services.

   Moreover, in defense of the claims against him, the defendant has provided certifications from the clients at issue.

Each and every client has stated that he or she did not terminate their relationship with AMG at the urging of Mr. Ries.  Each and every client attests that Mr. Ries did not solicit their business.  There is thus sufficient evidence on this record that although the reasons that each and every one of these subject clients terminated their relationships was because of Mr. Ries' *departure* from AMG, their decisions to terminate had nothing whatsoever to do with Mr. Ries' solicitations, representations or other breach of his employment contract.  In short, we can conclude that these clients terminated from AMG solely because Stephen Ries' would no longer be their financial advisor.

   We could, however, also conclude that while these clients are not presently being serviced by Mr. Ries, they are merely awaiting the time when they can effectively "re-hire" him.  To resolve these testimonial disparities we again revisit the transcripts from the December 14, 2006 hearing in this matter and the defendant's depositions.  In so doing, we find there is no question but that the defendant did assist a number of the above-referenced clients in "de-linking" their Charles Schwab accounts from AMG and placing them in the Schwab institutional "master" account and that he assisted at least two clients to procure financial statements and to buy a money market account after the entry of the TRO.

   Based upon this evidence then, we believe that the plaintiff

7

has clearly and convincingly demonstrated its entitlement to some compensation for the defendant's contempt at least with respect to several of the subject clients.  Specifically, we find that the requisite showing has been made that due to the defendant's interference with AMG's relationship with Ellen Connolly, Valerie and Gary Jusela, and Jamini Davies, Plaintiff lost profits from servicing those accounts.  This showing is sufficient to justify awarding the plaintiff for two year's lost revenue (the period of time during which Defendant was prohibited from servicing his former AMG clients) attributable to those clients in the total amount of $180,051.38.

   Given that the plaintiff was also compelled to institute legal proceedings to obtain a temporary restraining order and then to obtain compliance with that order, we find that it is entitled to at least recover the counsel fees and costs which it has incurred in uncovering and establishing Mr. Ries' contemptuous behavior.  It appears that Ms. Mager's declaration attesting to the reasonableness of the hourly rates charged in the Philadelphia marketplace is unchallenged.  However, after combing through the Greenberg Traurig time and expense reports, we cannot find that all of the entries are attributable to Mr. Ries' contempt.  Likewise, while we find that most of the time charged was appropriate, some of the entries reflect that some of the time charged, particularly for research of such uncomplicated

matters as the law governing the imposition of sanctions and contempt, were excessive.  Accordingly, we decline to award the plaintiff all of its counsel fees, instead finding that the amount of $138,140.73 is an appropriate figure.

    An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
AMG NATIONAL TRUST BANK        : CIVIL ACTION
                               :
        vs.                    :
                               : NO. 06-CV-4337
STEPHEN C. RIES                :
```

### ORDER

AND NOW, this 12th day of February, 2008, this Court having previously found Defendant Stephen C. Ries to have been in contempt of this Court's Temporary Restraining Order of October 3, 2006 and following careful consideration of the evidence presented by the parties, Defendant is hereby ORDERED to pay contempt sanctions in the amount of $318,192.11 to Plaintiff within ninety (90) days of the entry date of this Order.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER,           J.