```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMG NAT'L TRUST BANK,               :
                                    :
                 Plaintiff,         :    CIVIL ACTION
                                    :
     v.                             :    NO. 06-CV-4337
                                    :
STEPHEN C. RIES,                    :    (consolidated with
                                    :    NO. 09-CV-3061)
                 Defendant.         :
```

## ORDER

AND NOW, this   20th   day of July, 2011, upon consideration of Plaintiff's Second Motion for Contempt (Doc. No. 103), Defendant's response in opposition thereto (Doc. No. 120), and Plaintiff's reply in further support thereof (Doc. No. 123); Plaintiff's Expedited Motion for Sanctions for Defendant's Destruction of Evidence (Doc. No. 101), Defendant's response in opposition thereto (Doc. No. 121), and Plaintiff's reply in further support thereof (Doc. No. 124); and Defendant's Cross-Motion for Sanctions (Doc. No. 106), Plaintiff's response in opposition thereto (Doc. No. 125), and Defendant's reply in further support thereof (Doc. No. 127); after a hearing at which both sides appeared and a review of the parties' supplemental briefs (Docs. Nos. 141, 142-2, 143); and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that

> 1) Plaintiff's Second Motion for Contempt is GRANTED IN PART as follows:
>
> > a) Defendant Ries is adjudged in civil contempt of the temporary restraining order issued on October 3, 2006

    (Doc. No. 8), and the preliminary injunction issued on September 13, 2007 (Doc. No. 38).

    b) Defendant shall pay Plaintiff's attorneys' fees and costs associated with the Second Motion for Contempt. Plaintiff shall submit documentation of the costs and expenses for which it seeks reimbursement within fourteen (14) days of the entry of this Order.

    c) Plaintiff's request for imposition of a fine and referral to the United States Attorney's Office is denied.

2) Plaintiff's Motion for Sanctions is GRANTED as follows:

    a) Defendant is compelled to pay for a forensic examination and restoration of his Dell computer.

    b) Defendant shall pay Plaintiff's attorneys' fees and costs associated with the Motion for Sanctions. Plaintiff shall submit documentation of the costs and expenses for which it seeks reimbursement within fourteen (14) days of the entry of this Order.

    c) The Court will give an adverse-inference spoliation instruction at trial.

3) Defendant's Cross-Motion for Sanctions is DENIED.

                        BY THE COURT:

                         /s/ J. Curtis Joyner
                         J. CURTIS JOYNER, C.J.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| AMG NAT'L TRUST BANK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-4337 |
| | : | |
| STEPHEN C. RIES, | : | (consolidated with |
| | : | NO. 09-CV-3061) |
| Defendant. | : | |

## MEMORANDUM AND ORDER

**Joyner, C.J.**                                          **July       , 2011**

Before this Court are (1) Plaintiff's Second Motion for Contempt (Doc. No. 103), Defendant's response in opposition thereto (Doc. No. 120), and Plaintiff's reply in further support thereof (Doc. No. 123); (2) Plaintiff's Expedited Motion for Sanctions for Defendant's Destruction of Evidence (Doc. No. 101), Defendant's response in opposition thereto (Doc. No. 121), and Plaintiff's reply in further support thereof (Doc. No. 124); and (3) Defendant's Cross-Motion for Sanctions (Doc. No. 106), Plaintiff's response in opposition thereto (Doc. No. 125), and Defendant's reply in further support thereof (Doc. No. 127); as well as supplemental briefings by both parties (Docs. Nos. 141, 142-2, 143).  For the reasons set forth in this Memorandum, the Court grants Plaintiff's Motions in substantial part and denies Defendant's Motion.

1

## I.   BACKGROUND

Plaintiff AMG filed a Complaint on September 28, 2006, alleging that Defendant Ries breached his Confidential Information and Employment Agreement with Plaintiff, breached his fiduciary duties, and violated the Uniform Trade Secrets Act by contacting and providing services to Plaintiff's clients after resigning from Plaintiff's employ.  (Doc. No. 1.)  Plaintiff then moved for a temporary restraining order (TRO) and preliminary injunction enjoining Defendant from directly or indirectly contacting, soliciting, accepting business from, or performing or offering to perform services in any capacity, for any client or prospective client of Plaintiff, for a period of two years. (Doc. No. 2.)  The Court issued the TRO on October 3, 2006, enjoining such conduct until further hearing and decision by the Court.  (Doc. No. 8.)

On September 13, 2007, the Court issued a preliminary injunction enjoining Defendant from

> (1) Directly or indirectly contacting, soliciting, accepting business from, or performing or offering to perform services in any capacity for any client or prospective client as defined in the Confidential Information and Employment Agreement or any representative thereof of AMG for a period of two years or until September 5, 2008;
>
> (2) Using or disclosing Plaintiff's trade secrets and confidential or proprietary information, as defined in the Confidential Information and Employment Agreement in any manner whatsoever.

(Doc. No. 38.)  In arriving at its ruling, the Court found that

the evidence showed that Defendant had breached the Agreement and that the Agreement was enforceable under both the management/ executive and trade-secrets exceptions to Colorado's policy disfavoring restrictive covenants. (Id. at 19, 24.)[1] The Court also found Defendant in contempt of the TRO. (Id. at 28-29.)

Defendant appealed the September 13, 2007, order to the Third Circuit, which held that "[t]he District Court properly concluded that the restrictive covenant falls under the trade secrets exception to the policy," affirmed the preliminary injunction, and affirmed the finding of contempt. AMG Nat'l Trust Bank v. Ries, 319 Fed. App'x 90, 92-93 (3d Cir. 2008).

On remand, the parties proceeded with discovery, during which Plaintiff uncovered evidence that (1) Defendant had violated the TRO[2] and preliminary injunction by contacting and

---

[1] As this Court recognized, Colorado law provides that

> Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:
>
> . . .
>
>   (b) Any contract for the protection of trade secrets;
>
> . . .
>
>   (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.

Colo. Rev. Stat. § 8-2-113(2). For conciseness, the Court will use the term "management exception" to refer to section 8-2-113(2)(d).

[2] This evidence showed additional, previously unknown violations of the TRO, including contacts with clients and provision of financial services to AMG clients in May of 2007. See infra Section II.A. In issuing the September

3

providing services to Plaintiff's clients and (2) Defendant had destroyed computer files to cover up those contacts and services. As a result of the former discovery, Plaintiff filed the instant Second Motion for Contempt; as a result of the latter discovery, Plaintiff filed a Motion for Sanctions for spoliation. Defendant responded to the two Motions and filed a Cross-Motion for Sanctions, asserting that the TRO and preliminary injunction were invalid because they had been based on Plaintiff's misrepresentations concerning Defendant's status as an employee falling under the management exception to the unenforceability of restrictive covenants.

The court held a hearing on the Motions, after which they were ripe for decision. During this time, briefing on Defendant's motion for summary judgment also concluded. Before the Court could issue its rulings, Defendant unexpectedly filed a "Supplemental Brief" in further support of his motion for summary judgment and in further opposition to Plaintiff's pending Motions, claiming he had recently discovered new information that helps his position.[3] Plaintiff thereafter sought leave to respond to Defendant's supplemental brief, and Defendant filed a reply. Now, the three Motions are (again) ready for decision.

---

13, 2007, order finding Defendant in contempt of the TRO, in contrast, the Court found that, at that time, there was "no evidence on this record that the defendant has rendered any financial services to any of his AMG clients since November 2, 2006." (Doc. No. 38, at 12.)

[3] It does not.

4

## II. DISCUSSION

### A. Contempt of the TRO and preliminary injunction

"To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." John T. v. Del. County Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003) (internal quotation marks omitted). These "elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." Id. "[W]illfulness is not a necessary element of civil contempt," however, so even "good faith is not a defense." Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) (internal quotation marks omitted).

Defendant argues that the TRO and preliminary injunction were not valid court orders because (1) Plaintiff allegedly misrepresented Defendant Ries's employee status such that Ries did not truly fall under the management exception and (2) the trade-secrets exception could not render the orders valid when the management exception did not apply. The Court disagrees.

Contrary to Defendant's suggestion, only one exception need apply. See King v. PA Consulting Group, Inc., 485 F.3d 577, 587 (10th Cir. 2007) ("[T]he enforceability of the noncompete provisions must stand or fall on the applicability of one or more of the statutory exceptions." (emphasis added)); id. at 588-89

5

("Because we conclude that the Agreement's noncompete provisions fall within the business purchase exception, we need not review the district court's analysis of the trade secrets and management exceptions."); Phoenix Capital, Inc. v. Dowell, 176 P.3d 835, 840 (Colo. Ct. App. 2007) ("In the preliminary injunction context, the employer has the burden to establish that the covenant not to compete falls within one of those narrow exceptions."); Porter Indus. v. Higgins, 680 P.2d 1339, 1341 (Colo. Ct. App. 1984) ("[T]he employer was required to show that the covenant fell under one of the exceptions to the statute, i.e., either that the covenant was for the protection of trade secrets or that the employee was a member of executive or management personnel or was an officer or employee constituting professional staff to executive and management personnel.").[4]  Both this Court and the Third Circuit held that the trade-secrets exception applied and rendered the restrictive covenant enforceable.  Thus, it is irrelevant to the validity of the orders whether the management exception also applied in this case.  The court orders were valid, and the first element is satisfied.

---

[4] Phoenix Capital v. Dowell does not support Defendant's contention that the trade-secrets exception is inapplicable.  In Phoenix, the only argued basis for the restrictive covenant was the management exception.  See Phoenix Capital, Inc. v. Dowell, 176 P.3d 835, 844 (Colo. Ct. App. 2007) ("In the trial court, Phoenix initially alleged, but then determined not to pursue, a claim of improper use of trade secrets by Dowell.  Because, as Phoenix conceded in its opening brief, this appeal does not present any issues relating to trade secrets, we perceive no legal basis upon which to distinguish the unenforceable noncompetition agreement from the agreement not to solicit Phoenix's customers.")

The second element is easily satisfied, as Defendant had knowledge of the TRO and preliminary injunction. (See, e.g., Ries Dep. 84:24-88:13, 130:10-24, Doc. No. 103-2 Ex. G.)

The final element is also satisfied, as the Court finds by clear and convincing evidence, based on the documentary submissions by the parties and the hearing, that Defendant Ries violated the terms of the orders. (See, e.g., Doc. No. 103-2 Exs. E, F (showing income forecasts prepared by Defendant for his AMG clients in May and November of 2007); Ries Dep. 18:10-24:24, 73:4-96:25, 113:1-116:25, 129:1-132:25, Doc. No. 103-2 Ex. G.) In sum, there is clear and convincing evidence that Defendant is in civil contempt of the TRO and preliminary injunction.

### B. Sanctions for contempt

"Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" Robin Woods, 28 F.3d at 400 (citation omitted); see also Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1344 (3d Cir. 1976) ("Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience. Coercive sanctions, in contrast, look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially

contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience." (footnote omitted)).

"Trial judges have a variety of weapons with which they can achieve these ends." Latrobe, 545 F.2d at 1344.  For example,

> They may impose an indeterminate period of confinement which may be brought to an end only by the contemnor's ultimate adherence to the court order.  Alternatively, the court may levy a fine of a specified amount for past refusal to conform to the injunction, conditioned, however, on the defendant's continued failure to obey.  The court may also specify that a disobedient party will be fined a certain amount for each day of non-compliance.

Id. (footnote omitted).

In this case, the Court will award Plaintiff, as compensatory relief, the attorneys' fees and costs that it incurred in seeking Defendant's compliance with the orders.  See Robin Woods, 28 F.3d at 400 (affirming an award of attorneys' fees to restore the plaintiff to the position it would have occupied had the other side complied with the injunction); Schauffler v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus., 246 F.2d 867, 870 (3d Cir. 1957) (reaffirming that those in contempt of an injunction should pay "a sum which represents expenses necessarily incurred by [the plaintiff] in connection with the prosecution of the petition in civil contempt, including counsel fees and other expenditures incurred in the investigation, preparation, presentation and

final disposition of the petition" (internal quotation marks omitted)).

The Court will not order the fine that Plaintiff seeks, however. Plaintiff states that it is seeking sanctions both "to compensate AMG for the harm Ries caused AMG . . . <u>and to punish</u> Defendant for his wrongdoing." (Mem. in Supp. of Pl.'s Second Mot. for Contempt 2, Doc. No. 103-1.) In contrast to criminal contempt, civil contempt is not designed to punish the contemnor; it is solely designed to compensate the plaintiff and coerce future compliance. A fine for past misconduct is not coercive. <u>Gregory v. Depte</u>, 896 F.2d 31, 34 (3d Cir. 1990). Though monetary sanctions for past misconduct might in some cases be appropriate as compensatory relief, the Court declines in this case to issue such an award, predicated on a liquidated damages clause, at this stage. <u>See</u> <u>id.</u> at 34-35 (vacating a supposedly compensatory fine for past misconduct because the evidentiary basis for the figure was lacking and a compensatory sanction "must not exceed the actual damages caused the offended party"); <u>see also</u> <u>Ries</u>, 319 Fed. App'x at 93 ("Because the determination of the revenues lost as a result of Ries' contempt is speculative to some extent and is intertwined with the merits of AMG's action, the issue is best left until a final determination on the merits.").[5]

---

[5] The Court also declines Plaintiff's invitation to refer the case to the United States Attorney's Office.

C.  Spoliation

"A party that reasonably anticipates ensuing litigation has an affirmative duty to preserve evidence that may be relevant, and failing to do so constitutes spoliation."  Travelers Prop. Cas. Co. v. Cooper Crouse-Hinds, LLC, No. 05-6399, 2007 WL 2571450, at *4 (E.D. Pa. Aug. 31, 2007); see also Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 111 (E.D. Pa. 2005) ("A litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." (internal quotation marks omitted)); id. at 110 ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (internal quotation marks omitted)).

"A showing of spoliation may give rise to a variety of sanctions," including "[1] dismissal of a claim or granting judgment in favor of a prejudiced party; [2] suppression of evidence; [3] an adverse inference, referred to as the spoliation inference; [4] fines; [and] [5] attorneys' fees and costs." Paramount, 234 F.R.D. at 110-11 (internal quotation marks omitted) (alterations in original).  "There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left

to the discretion of the Court." Id. at 111.

In determining whether entry of judgment or suppression of evidence is an appropriate sanction, however, the Court is to consider

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994). "When determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." Paramount, 234 F.R.D. at 111 (internal quotation marks omitted). "When considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed." Id. at 112 (internal quotation marks omitted). Moreover, "a court should resort to the drastic sanction of entering judgment against a spoliating party only when 'no alternative remedy by way of a lesser, but equally efficient sanction is available.'" Travelers, 2007 WL 2571450, at *4 (citation omitted).

A lesser sanction, "[t]he spoliation inference[,] permits a

11

fact finder to infer that the 'destroyed evidence might or would have been unfavorable to the position of the offending party.'" Paramount, 234 F.R.D. at 112 (citation omitted); see also Schmid, 13 F.3d at 78; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995).

> Levying the spoliation inference against a party accused of failing to preserve integral evidence is appropriate when: (1) the relevant evidence was within the accused party's control; (2) the party's conduct resulted in the suppression, withholding, or destruction of the evidence; (3) the evidence was relevant to the opposing party's claims or the accused party's claims; and (4) it was reasonably foreseeable that the evidence would later be discoverable by the opposing party.

Travelers, 2007 WL 2571450, at *7; see also Brewer, 72 F.3d at 334.

In this case, the first Schmid factor points in favor of a strong sanction:  Defendant bears personal responsibility for the deletion of his computer files, and the evidence strongly suggests that his purpose in deleting the files was to prevent their discovery.  (See, e.g., Ries Dep. 81:4-84:23, 113:2-116:25, Doc. No. 103-2 Ex. G.)  The extent of prejudice is not fully known, however.  While Plaintiff was fortunate enough to learn of the spoliation from another witness in discovery, (see Doc. No. 103-2 Exs. E, F), there may be additional files and contacts that have not come to light and that cannot be recovered.  Considering the present uncertainty, the Court declines to enter judgment in favor of Plaintiff as a sanction.  Instead, the Court will order

Defendant to pay for a forensic examination of his computer in order to determine what, if any, evidence can be recovered.

The Court will also give a spoliation inference at trial, with the language to be determined after the results of the forensic examination, when Plaintiff and this Court have a better basis for determining the amount of prejudice to Plaintiff.  Such a sanction is appropriate under the Travelers/Brewer factors: The evidence was certainly within Defendant's control, on his Dell computer.  (See, e.g., Ries Dep. 82:2-17, Doc. No. 103-2 Ex. G.)  Defendant's conduct resulted in the destruction of the evidence, as admitted by Defendant.  (See, e.g., id. at 81:4-84:23; see also Yarnall Decl., Doc. No. 101-2 Ex. D (attesting that a computer clean-up was performed shortly before the computer was handed over to Plaintiff's expert).)  The evidence was relevant, as it showed financial information prepared for former AMG clients during the pendency of the court orders and restrictive covenant.  (See, e.g., Ries Dep. 81:4-86:21, 113:2-116:25, Doc. No. 103-2 Ex. G.)  Fourth, it was more than reasonably foreseeable that the computer files would be discoverable, as Plaintiff specifically and repeatedly requested documentation of Defendant's contacts with Plaintiff's clients.  (See, e.g., Pl.'s Expedited Req. for Produc. of Docs., Doc. No. 103-2 Ex. A.; Pl.'s Third Req. for Produc. of Docs., Doc. No. 103-2 Ex. B; Pl.'s Req. for Supplemental Disc. Resps., Doc. No.

103-2 Ex. C.)  Moreover, while even "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference," MOSAID Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 338 (D.N.J. 2004), Defendant's conduct is very suspect.  (See, e.g., Ries Dep. 113:2-116:25, Doc. No. 103-2 Ex. G (admitting that he deleted information necessary for a financial projection after he created the projection, subsequently re-sought the information so that he could prepare another report, and again deleted the information).)  See also Travelers, 2007 WL 2571450, at *5-7 (granting an adverse-inference instruction when a party had control over evidence that deteriorated before being provided to opposing counsel, even though the party did not appear to have acted intentionally or maliciously); Paramount, 234 F.R.D. at 111 (giving an adverse-inference instruction when the defendant "knew or should have known that the computer's memory was relevant to the lawsuit against him because he received notice of the action against him . . . sixteen days before he wiped the hard drive clean," and stating that the argument that he wiped it in preparation for selling it did "not obviate his duty to preserve the computer's memory"); MOSAID, 348 F. Supp. 2d at 339 (affirming the magistrate judge's imposition of a spoliation inference when the defendant did not retain emails); Howell v. Maytag, 168 F.R.D. 502, 506 (M.D. Pa. 1996).

The Court will also award Plaintiff its attorneys' fees and costs as compensatory relief.  See, e.g., MOSAID, 348 F. Supp. 2d at 339 (affirming the magistrate judge's imposition of monetary sanctions "to compensate MOSAID for the time and effort it was forced to expend in an effort to obtain discovery it was entitled to"); see also Gordon Partners v. Blumenthal (In re NTL, Inc. Sec. Litig.), 244 F.R.D. 179, 181 (S.D.N.Y. 2007) (awarding costs and fees when the defendant did not retain electronic information).

D.  Misrepresentation

Though Defendant does not provide the precise legal basis on which he is requesting sanctions for Plaintiff's purported misrepresentations to the Court, it is well-established that a court may sanction a party or counsel for misrepresentations. See generally Apoian v. Am. Home Prods. Corp., 108 F. Supp. 2d 454, 459-60 (E.D. Pa. 2000) (setting forth various sources of power to sanction for misrepresentations).

The Court is not convinced that Plaintiff misrepresented Defendant's employment status when arguing that Defendant fell under the management exception.[6]  For example, despite Defendant's

---

[6] As this Court recognized when issuing the preliminary injunction, whether an employee is executive or management personnel or professional staff, such that he falls under the management exception, is a question of fact for the trial court.  Phoenix, 176 P.3d at 841. "[T]he Colorado Supreme Court has not considered this exception, and the other courts that have considered the exception have not provided a clear definition for who qualifies as 'executive and management personnel.'"  DISH Network Corp. v. Altomari, 224 P.3d 362, 366 (Colo. Ct. App. 2009) (internal quotation marks

15

contention that Plaintiff misrepresented Defendant's initial position as being that of a Financial Counselor when he was actually hired as a Financial Counselor in Training, both the Complaint and the motion for a TRO and preliminary injunction acknowledged that Ries had training before being a financial counselor.  (Compl. ¶ 7, Doc. No. 1; Mem. in Supp. of Mot. for TRO and Prelim. Inj. 2, Doc. No. 2.)  Perhaps most significant, the Agreement classified Ries as a member of the executive/ management team.  (Doc. No. 38, at 23.).[7]  Additionally, Plaintiff had the sworn affidavit of Masood Dhunna, Regional Vice President and Financial Counselor for AMG, who stated that "Stephen Ries was a management employee."  (Dhunna Decl., Doc. No. 2.)  That Defendant subsequently gathered and presented statements from other employees disputing Defendant's job responsibilities does not mean that Plaintiff was dishonest at the earlier stage.  See generally New Life Homecare, Inc. v. Blue Cross of Ne. Pa., No. 06-2485, 2008 WL 534472, at *4-5 (M.D. Pa. Feb. 20, 2008) (denying Rule 11 sanctions because the alleged misrepresentation in the complaint was "not conclusively a misleading statement" but rather seemed to be a characterization of facts).

---

omitted).

[7] The Agreement stated that "[t]he undersigned employee (Employee) is a member of AMG's executive or management team or professional staff supporting such team and works in a capacity in which Employee may obtain or contribute to confidential information that is the property of AMG."  (Compl. Ex. A at 1, Doc. No. 1.)  The Court expressly relied on this evidence, among other things, in deciding to issue the preliminary injunction.  (Doc. No. 38, at 23.)

Thus, Defendant's position is unpersuasive, and the cross-motion is denied.[8]

### III.  CONCLUSION

For the foregoing reasons, Defendant Ries is adjudged in civil contempt of the TRO and preliminary injunction, and the above-described sanctions are ordered.  The Court also finds that Defendant destroyed evidence, for which conduct the above-described sanctions are ordered.  Finally, Defendant's cross-motion for sanctions is denied.

---

[8] In any event, the sanctions Defendant seeks–dismissal of the case against Defendant, a return of all attorneys' fees Defendant was previously ordered to pay for his contempt of the order, and payment of Defendant's attorneys' fees incurred in this action–would be inappropriate, as there was a valid alternate ground for issuance of the TRO and preliminary injunction. See supra Section II.A.

17